Ulysses T. CARTER, Plaintiff,

v.

BRUCE OAKLEY, INC., Defendant.

No. LR–C–90–155.

United States District Court,
E.D. Arkansas, W.D.

March 5, 1993.

John Biscoe Bingham, Hoofman & Bingham, P.A., North Little Rock, AR, for plaintiff.

Fletcher C. Lewis, Little Rock, AR, for defendant.

## ORDER

ROY, District Judge.

In this case the plaintiff, Ulysses T. Carter, complains that he was illegally discharged from his job at Bruce Oakley, Inc., ("Oakley") for refusing to cut the beard he wore for religious reasons. He argues that Oakley's enforcement of its "no beard" policy conflicted with certain Jewish religious beliefs he holds and violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. He properly first sought and obtained a notice of right to sue letter from the Equal Employment Opportunity Commission on February 23, 1990.

The matter was tried before the Court without a jury on December 7, 1992. Ten days later, a directed verdict was entered in favor of separate defendant Adam Ratcliffe. The remaining parties have since filed their post trial briefs and the matter is now ripe for ruling. The following comprise the Court's findings of fact and conclusions of law:

The plaintiff is a black male born October 22, 1959. He was raised and educated in Arkansas. His religious training as a youth was in the Baptist denomination of the Christian faith and he was baptized in a Baptist church in Pine Bluff or Wrightsville, Arkansas in or about 1971. He last attended Baptist church services about 1977, though he was married by a Baptist minister in 1981. In between, plaintiff briefly attended Arkansas State University—Beebe junior college and Arkansas Baptist College in Little Rock. During this time the plaintiff knew few, if any, Jewish people, nor did he attend synagogue, nor did he receive any type of religious training in Judaism.

After leaving college, the plaintiff began working at a variety of jobs as essentially an unskilled laborer. At no time before 1983, and probably not until later, did he indicate to any of his employers that he was Jewish.

Sometime during 1985 the plaintiff began his first of three stints as an employee of the defendant. At that time he was informed of the company's "no beard" policy by Dennis Oakley. That employment lasted until about March of 1986.

Plaintiff returned to work for the defendant in late April or May of 1986 without his beard and worked for Oakley until about July 15, 1986, when he was discharged for excessive absenteeism. During these two stints working for the defendant, the plaintiff shaved his beard on several occasions after being threatened with being fired by his superiors at the company. Afterward, plaintiff obtained work elsewhere.

On or about January 16, 1989, the defendant found itself shorthanded at its Beebe facility. Specifically, they needed someone with Carter's experience of operating a specific type of machine. Former defendant Ratcliffe, general manager for the defendant at the time, consented to allow plaintiff to observe certain religious practices, including certain holidays, as well as to allow plaintiff to wear a beard if he would return to work for Oakley.

However, the following day plaintiff went to work for another company that would pay him more. Ratcliffe again contacted Carter and offered him a raise if he would return to work for the defendant. Ratcliffe agreed that Carter would be allowed to practice his religious beliefs, including wearing his beard. However, after Carter returned to work for Oakley on or about January 18, 1989, Ratcliffe immediately demanded that Carter trim his beard in such a way that Carter deemed to be in conflict with his religious beliefs. These demands continued over a period of some four months and constituted a regular source of contention between plaintiff and defendant.[1]

In May of 1989 the plaintiff injured his shoulder at work. This resulted in his filing a worker's compensation claim which was eventually settled in his favor in November of that year. Mr. Carter never returned to work at Oakley after his injury. On June 7, 1989, the plaintiff filed his complaint with the EEOC, a precursor to this action, in which he claimed religious discrimination based on the defendant's harassment regarding his beard.

\* \* \*

## PRIMA FACIE CASE

In order to establish a prima facie case of religious discrimination under §§ 2000e–2(a)(1) & (j), a plaintiff must plead and prove that (1) he has a bona fide belief that compliance with an employment requirement is contrary to his religious faith; (2) he informed his employer about the conflict; and (3) he was discharged because of his refusal to comply with the employment requirement.

*Brown v. General Motors Corp.*, 601 F.2d 956, 959 (8th Cir.1979) (footnote omitted). The Court will address whether Mr. Carter meets this three-part test.

### 1. Bona fide belief

The defendant argues that even if the plaintiff's purported beliefs are sincerely held, which it does not concede, they do not constitute religious beliefs within the meaning of, and the protection of, Title VII and/or the First Amendment. Defendant states that the plaintiff's beliefs are not Jewish (as plaintiff has suggested at times), either Orthodox or otherwise, nor are they consistent with any recognizable form of the Christian faith.

The Court closely observed the plaintiff while he was being questioned regarding his beliefs and even directed questions from the bench. The Court agrees that Mr. Carter's beliefs do not neatly fit into any "traditional" religion with which the Court is familiar. In aggregate, it would be fair to describe them as a mix of Christianity and Judaism. In fact, some of his beliefs might even seem at

---

1. The matter of plaintiff's beard was apparently the only religious practice of the plaintiff which the defendant did not accommodate.

odds with others he expresses, were the Court permitted to inquire into the legitimacy of his beliefs (which for good reason we may not).

However, the Court finds the plaintiff to be sincere in his belief in a Supreme Being who has revealed His will in scripture. The Court further finds that the plaintiff bases his beliefs concerning his wearing of his beard on certain scriptures [2] and, in fact, that the plaintiff has an impressive knowledge of much Old and New Testament scripture. The Court finds that plaintiff's sincerely held beliefs include wearing his beard in such a way as to be in conflict with the defendant's employment policies. Thus, the first prong of the test has been met.[3]

### 2. Informing of employer

The Court finds by a clear preponderance of the evidence that the plaintiff informed the defendant on more than one occasion that the defendant's policy on facial hair was in conflict with the plaintiff's religious beliefs.

### 3. Whether discharged because of refusal to comply

The defendant argues that not only was the plaintiff not fired because of his objection to the company's hair policy, he was not even fired at all. Oakley argues that the plaintiff stopped working because of an injury and that plaintiff filed for unemployment benefits contending that job injury was the reason he was out of work. Defendant argues that these actions are not consistent with plaintiff's claim that he was constructively discharged because of a conflict concerning his religious beliefs.

However, the plaintiff contended at trial, and the Court finds evidence introduced on this point to be credible, that the defendant refused to allow the plaintiff to return to work once his injury had healed because of the conflict concerning the way the plaintiff wished to wear his beard. The Court finds that plaintiff was denied continued employment with the defendant because of his refusal to comply with an employment requirement which conflicted with a bona fide religious belief. The Court therefore holds that the plaintiff has established a prima facie case of religious discrimination under § 2000e.

### ACCOMMODATION BY EMPLOYER

■ Section 2000e–2(a)(1) requires an employer to accommodate the religious observances of its employees unless such accommodation would contravene the provisions of a valid collective bargaining agreement or would cause the employer undue hardship. *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977).[4] It is not disputed that no collective bargaining agreement is involved in this case. Thus, the only thing to consider is what hardship would have been suffered by the defendant in having to accommodate the plaintiff's beliefs. The Supreme Court has determined that "accommodation causes 'undue hardship' whenever that accommodation results in 'more than a *de minimis* cost' to the employer." *Ansonia Board of Education v. Philbrook,* 479 U.S. 60, 67, 107 S.Ct. 367, 371, 93 L.Ed.2d 305 (1986), citing *Hardison, supra* 432 U.S. at 84, 97 S.Ct. at 2277.

During trial, the defendant seemed to have difficulty deciding exactly why Mr. Carter

---

**2.** "Do not cut the hair at the sides of your head or clip off the edges of your beard." *Leviticus 19:27 (NIV).*

**3.** The defendant does not dispute that the wearing of beards by adult males in certain religions is a widespread practice. For example, it is common among the Amish and other Mennonites.

**4.** Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual ... because of [his] ... religion." 42 U.S.C. § 2000e–2. Religion is defined earlier in the Act as follows:

The term "religion" includes all aspects of religious observance and practice, as well as belief; *unless an employer demonstrates that he is unable to reasonably accommodate [the religious practice] without undue hardship on the conduct of the business.*

42 U.S.C. § 2000e(j) (emphasis added).

"The reasonable accommodation duty was incorporated into the statute, somewhat awkwardly, in the definition of religion." *Ansonia Bd. of Education v. Philbrook,* 479 U.S. 60, 63 n. 1, 107 S.Ct. 367, 369 n. 1, 93 L.Ed.2d 305 (1986).

should not be allowed to wear his beard while in its employ. Certainly, Oakley never demonstrated to the Court's satisfaction that it would have suffered undue hardship had it allowed Mr. Carter to wear his beard the way he wanted.

At one point Oakley argued that having a beard was unsafe. However, Oakley never demonstrated how Mr. Carter or any other employee would be subject to a greater chance of injury by having a beard. Oakley also argued that face masks the employees sometimes wore would not fit properly if one wore a beard. However, the plaintiff spoke credibly and convincingly about how he thought his short beard allowed his mask to provide a tighter seal than if he were to wear the mask clean shaven. He emphatically denied that the beard interfered with his work in any manner.

At one point, Oakley argued that allowing Mr. Carter to wear his beard in the style he preferred would have projected an unprofessional appearance. However, in responding to a question from the Court, the plaintiff testified that while in court he was wearing his beard in a style and length substantially similar to the way he did while at Oakley. This testimony was not contested.

Though admittedly a somewhat subjective opinion, the Court finds that Mr. Carter's beard at the time he was before the Court was well groomed and of short to moderate length. The Court therefore finds that plaintiff's beard at the time he was employed by defendant did not project "an unprofessional appearance."

In summary, the Court holds that the defendant has not demonstrated an undue burden it would have suffered had the plaintiff been allowed to wear his beard in his requested manner. The reasons offered by Oakley seem contrived and are not convincing.

The Court finds that one of the most revealing exchanges on the subject occurred when the defendant's president Dennis Oakley was directly asked why the company had the no-beard policy. His answer was that his father had started it and the company was going to continue it.

The Courts concludes that the defendant simply did not want the plaintiff to wear his beard and constructively discharged[5] him because of his refusal to comply with Oakley's employment requirement. The defendant did not meet its legal responsibility to attempt to accommodate the plaintiff's religious beliefs and practices.

\*    \*    \*

▮ Based on the foregoing, the Court finds for the plaintiff. However, the Court also finds that because of the animosity displayed towards the plaintiff by the defendant in the past, it would not be feasible to order the plaintiff reinstated. Accordingly, the Court finds it appropriate to award the plaintiff backpay and attorney fees. However, the post trial briefs gave little attention to the matter of damages, past or future.

Therefore, the Court orders the parties to file supplemental post-trial briefs on the damages issues. Particular attention should be given to plaintiff's employment since working for the defendant, and any other factor that might mitigate the amount to be awarded to the plaintiff. Both parties should be *quite specific* with regard to the type and amount of damages they believe should be awarded, and make clear the methodology each would have the Court employ in completing the damages calculations. The matter of attorney fees should also be addressed in these briefs, with the same specificity.

Plaintiff shall file his brief no later than Monday, March 15, 1993, and the defendant shall file its brief no later than Friday, March 26, 1993. Final judgment shall be entered at that time.

IT IS SO ORDERED.

---

**5.** The Court finds refusing to allow the plaintiff to return to work after his injury is, for the purposes of this case, the same as firing him.